**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Baker,<br><br>         Plaintiff,<br><br>vs.<br><br>Capital One Bank; Equifax Information Services, LLC; Retailers National Bank;<br><br>         Defendants. | No. CV 04-1192-PHX-NVW<br><br>**ORDER** |

The court has considered Defendant Retailers National Bank's Motion For Summary Judgment (doc. # 63) ("Motion"), Statement Of Facts In Support Of Defendant Retailers National Bank's Motion For Summary Judgment (doc. # 64) ("Retailers SOF" and "Retailers SOF Ex."), Notice Of Errata Filed By Defendant Retailers National Bank (doc. # 66), Plaintiff's Response And Memorandum Opposing The Retailers National Bank Motion For Summary Judgment (docs. # 68 or # 69) ("Response"), Affidavit Of Plaintiff Christine Baker In Support Of Her Objection To The Retailers National Bank Motion For Summary Judgment (doc. # 70), Plaintiff's Response To The Retailers National Bank Statement Of Facts (doc. # 71), Reply Supporting Defendant Retailers National Bank's Motion For Summary Judgment (doc. # 79) ("Reply"), and Retailers National Bank's Objection To Exhibits . . . Plaintiff's Affidavit . . . And Response To Retailers National Bank Statement Of Facts (doc. # 81) ("Objection").  The court has also considered Plaintiff's Response To Retailer National Bank's Objection To Her Exhibits, Affidavit And Response To The

Statement Of Facts In Support Of Her Opposition To Its Motion For Summary Judgment (doc. # 95).

Plaintiff Christine Baker ("Baker") brought this action against various defendants alleging violations of the Fair Credit Reporting Act and the Equal Credit Opportunity Act with regard to her personal credit reports and her creditors' reporting practices. Defendant Retailers National Bank ("Retailers"), a creditor of Baker and reporter of credit information about Baker to credit reporting agencies, now moves for summary judgment on Baker's claims that Retailers violated various provisions of those acts.

**I.  Background**

Retailers issued two credit cards to Baker, a Target store card and a Mervyn's credit card. (Motion at 2.) Retailers routinely submits information related to Baker's accounts to credit reporting agencies on an automated basis. (Retailers SOF at ¶ 2.) On November 6, 2002, and February 10, 2003, Retailers received notices from credit reporting agencies that Baker had disputed information reported by Retailers to such agencies. (Retailers SOF at ¶¶ 9, 11.) The parties dispute whether Retailers conducted a reasonable investigation of those disputes and whether Retailers submitted accurate corrective information to the credit reporting agencies in response to the notices.

Baker contends that Retailers' failure to report Baker's credit limit leads credit reporting agencies to report her "high credit" amount, which is the highest amount of credit ever utilized, as her credit limit, a practice that has the effect of reducing her credit score. (Response at 4.) Retailers submits that although it has no legal duty to report customers' credit limit, it does report its customers credit limit along with all other pertinent information in its reports to credit reporting agencies. (Retailers SOF at ¶ 8.)

**II.  Legal Standard For Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c) (2004);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must evaluate a party's motion for summary judgment construing the alleged facts with all reasonable inferences favoring the nonmoving party. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. *See also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Although the initial burden is on the movant to show the absence of a genuine issue of material fact, this burden may be discharged by indicating to the Court that there is an absence of evidence to support the nonmoving party's claims. *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001).

**III. Reporting Credit Limits In Response To Notification Of Dispute From A Credit Reporting Agency Under The Fair Credit Reporting Act**

Baker alleged in her Complaint that Retailers violated the Fair Credit Reporting Act by failing to report Baker's credit limit to credit reporting agencies after being informed by those agencies that Baker had disputed information reported by Retailers. The Fair Credit Reporting Act as codified in 15 U.S.C. § 1681s-2(b)(1) states:

> **(b) Duties of furnishers of information upon notice of dispute**
> **(1) In general**
>   After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of

- 3 -

> any information provided by a person to a consumer reporting agency, the person shall—
> **(A)** conduct an investigation with respect to the disputed information;
> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> **(C)** report the results of the investigation to the consumer reporting agency; and
> **(D)** if the investigation finds that the information is *incomplete* or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(Emphasis added). Focusing on the "completeness" language of § 1681s-2(b)(1)(D), Baker argues that Retailers' failure to report Baker's credit limit — in addition to all other pertinent information — to consumer reporting agencies after receiving notice of Baker's dispute was a violation of this section.

Baker has not provided authority for the assertion that 15 U.S.C. § 1681s-2(b)(1) requires creditors to include in their reports consumers' credit limits in order for the creditors' reports to be "complete." "Completeness" as required by § 1681s-2(b)(1) must have boundaries; the determination of what is "complete" must be made with reference to some objective standard of what is generally required in creditors' reports to reporting agencies. Baker has provided no authority and the court has found none suggesting that the statute would generally require credit limits to form a part of such reports. On the contrary, a negative inference is permissible. The statute expressly provides that creditors must report specific other information to consumer reporting agencies yet does not so mandate with respect to a consumer's credit limit. *See* 15 U.S.C. § 1681s-2(1)(3)-(5). Retailers also urges a negative inference from a January 18, 2000 press release by the Federal Financial Institutions Examination Council, which referenced the practice of some financial institutions that do not report credit limits but made no suggestion that such omissions were unlawful. (Retailers SOF at Ex. D.) In light of the foregoing, Baker's bare assertion that the report needed to include her credit limit in order to be "complete" is unsupported. Retailers is therefore entitled to summary judgment on this issue.

- 4 -

**IV. The Adverse Action Letter Requirement Under The Fair Credit Reporting Act And The Equal Credit Opportunity Act**

**A.     The Fair Credit Reporting Act**

Baker argues that Retailers did not comply with the adverse action letter requirement of the Fair Credit Reporting Act in 15 U.S.C. § 1681m(a), which states in relevant part:

> **(a) Duties of users taking adverse actions on the basis of information contained in consumer reports**
> If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall–
> **(1)** provide oral, written, or electronic notice of the adverse action to the consumer;
> **(2)** provide to the consumer orally, in writing, or electronically–
> **(A)** the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person . . . .

Baker argues that Retailers violated this provision in two ways. First, Baker argues that Retailers should have sent Baker an adverse action letter when Retailers reduced her Mervyn's account credit limit due to inactivity. Second, Baker argues that Retailers should have sent Baker an adverse action letter when Retailers thereafter reinstated her credit limit, at her request, to $300 as opposed to her requested level of $400. Retailers has withdrawn its motion for summary judgment with respect to this latter incident. (Reply at 6.)

The issue before the court, therefore, is whether the definition of "adverse action" in § 1681m(a) includes a reduction in a credit limit based on account inactivity. The definition of "adverse action" applicable in "Subchapter III–Credit Reporting Agencies," in which § 1681(m)(a) is found, is located in 15 U.S.C. § 1681a(k). That section states that "The term 'adverse action' . . . has the same meaning as in section 1691(d)(6) of this title." The definition in § 1691(d)(6) is elaborated in 12 C.F.R. § 202.2(c), which states in relevant part:

> (c) Adverse action.
> (1) The term means:
> . . .
> (2) The term does not include:
> . . .

- 5 -

        (ii) Any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account.

Thus, reduction in a consumer's credit limit based on account inactivity is not an "adverse action" and does not trigger the "adverse action" letter duty in 15 U.S.C. § 1681m(a). Since Baker does not dispute that Retailers' reduction of Baker's credit limit was taken due to account inactivity, the court grants Retailers' motion.

### B.  The Equal Credit Opportunity Act

The regulations referenced above were passed pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et. seq., which requires similar disclosures upon such "adverse actions." Because the Equal Credit Opportunity Act uses the same definition of "adverse action" as the Fair Credit Reporting Act, the court also grants Retailers' motion with respect to the Equal Credit Opportunity Act for Retailers' failure to provide an adverse action letter based on its reduction of Baker's credit line for account inactivity. As with Baker's claim under the Fair Credit Reporting Act, Retailers has withdrawn its motion for summary judgment related to Retailers' reinstatement of a lower credit limit than that requested by Baker. (Reply at 6.)

### V.  Reasonable Investigation Under The Fair Credit Reporting Act

Baker alleged in her Complaint that Retailers wilfully and negligently failed to conduct a reasonable investigation of Baker's disputes, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b). As discussed above, that section requires creditors who have received notice of a consumer's dispute to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). Case law interpreting the section requires that such an investigation be "reasonable." *Johnson v. M.B.N.A. Amer. Bank*, 357 F.3d 426, 431 (4th Cir. 2004).

Retailers moves for summary judgment arguing that it reasonably investigated and corrected the consumer disputes of which it was apprised. Although Baker makes passing references to the issue in her Response to Retailers' Statement Of Fact (doc. # 71 at ¶¶ 9-14), Baker does not openly oppose Retailers' motion on this issue in her brief.

- 6 -

1    Baker submits evidence that Retailers confirmed incorrect information with the credit
2 reporting agencies, (*see* doc. # 71 at ¶¶ 9-14; doc. # 70 at ¶¶ 2-3), apparently to show the
3 unreasonableness of Retailers' investigations by reference to Retailers' actions after those
4 investigations. Specifically, Baker's affidavit suggests that on two occasions – on November
5 3, 2002, and sometime in February – she disputed her Target store card credit limit and that
6 Retailers confirmed its reporting of $157 as opposed to her true credit limit of $200. (doc.
7 # 70 at ¶¶ 2, 3.) Baker alleges that $ 157 was her "High Balance," inaccurately reported as
8 her credit limit. (*Id.*)

9    Retailers presents evidence that Baker only registered two complaints, one on
10 November 6, 2002 and one on February 10, 2003. (DSOF Ex. B at ¶¶ 3, 5, 7.) The first
11 complaint, according to Retailers, dealt with erroneously reported lated payments and did not
12 relate to Baker's credit limit. (*Id.* at ¶ 3.) In response to Baker's second complaint, which
13 Retailers acknowledges related to Baker's credit limit, Retailers argues that it corrected the
14 reporting error. (DSOF Ex. B at ¶¶ 5-6.) Despite Baker's allegations to the contrary, even
15 Baker's evidence suggests that Retailers corrected her report following the second complaint.
16 (*See* doc. # 68 or # 69 at Ex. K-6 (correctly reporting the "High Balance" as $157 and the
17 "Credit Limit/ Original Amount" as $200 and noting that "This item was verified on Feb
18 2003 and remained unchanged.").)

19    Baker's evidence is not probative of the reasonableness of Retailers' investigation.
20 The credit reports and Baker's affidavit tend to show only that after investigating Baker's
21 complaints, Retailers declined to alter the information it was reporting. (*See* PSOF Ex. K-1
22 ("RNB – Target *remains*" (emphasis added)); K-3 ("Target verified the information it was
23 reporting."); K-4 (RNB – Target *remains*" (emphasis added)); K-5 (showing reporting of
24 $157 limit).) Nevertheless, Retailers has objected to Baker's evidence.

25   **A.**  **Evidentiary Issues**

26    "It is well settled that only admissible evidence may be considered by the trial court
27 in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs.*, 854 F.2d
28 1179, 1181 (9th Cir. 1988). Baker's evidence consists of various exhibits and an affidavit.

1  (Response at "Exhibits K" at K-1 through K-8; doc. # 68 or # 69.)  The exhibits appear
2  predominantly to be portions of Baker's personal credit reports or responses to inquiries made
3  of credit reporting agencies, and the affidavit relates information obtained by Baker from
4  credit reporting agencies while investigating the claims underlying her Complaint. (*See* doc.
5  #s 68 or # 69, 70.)  Retailers first objects to Baker's exhibits on the ground that they are
6  unauthenticated.

7  Baker's exhibits are properly authenticated.  "The requirement of authentication or
8  identification as a condition precedent to admissibility is satisfied by evidence sufficient to
9  support a finding that the matter in question is what its proponent claims."  Fed.R.Evid.
10 901(a).  Testimony of a witness with knowledge that a matter is what it is claimed to be
11 satifies this requirement. Fed.R.Evid. 901(b)(1).  Baker submits an affidavit stating that "All
12 my exhibits are true copies of documents received from the [Credit Reporting Agencies]."
13 (doc. # 70 at ¶ 8.)  Baker's affidavit testimony satisfies the requirement of authentication for
14 these exhibits to be admitted as reports received from credit reporting agencies.

15 Retailers next objects to Baker's exhibits and affidavit on the ground that they are
16 hearsay.  Hearsay is an out-of-court assertion offered to prove the truth of the matter asserted.
17 Fed.R.Evid. 801(c); *Beyene*, 854 F.2d at 1182.

18 Baker offers her exhibits into evidence for the truth of statements made in them.  For
19 example, Exhibit K-2 — apparently part of an Experian credit report — states with respect
20 to Baker's Target account that "This item was verified on 11-2002 and remained
21 un[changed]."  (Response at Exh. K-2 at 1.)  Baker submits this document as proof that
22 Retailers verified $157 as Baker's credit limit instead of $200. (doc. # 70 at ¶ 2). Exhibit K-
23 2 is thus offered to prove the truth of the matter asserted in it, and is hearsay. *See Capital*
24 *Funding v. Chase Manhattan Bank*, 2005 U.S. Dist LEXIS 2212, no. 01-6093, *6 (E.D.Pa.
25 Feb. 11, 2005) (affirming exclusion of credit reports as hearsay).

26 Exhibits K-1 and K-3 through K-5 are similarly introduced for the purpose of proving
27 that Retailers verified reported amounts, which is the matter asserted in statements in those
28

- 8 -

1 documents. (*See* doc. # 68 or # 69 at K-1, K-3, K-4, K-5; doc. # 70 at ¶¶ 2-3; doc. # 71 at
2 ¶¶ 10, 12.) These exhibits are therefore also hearsay.

3 Some of Baker's affidavit testimony, moreover, is hearsay. For example, Baker's
4 affidavit testimony relates conversations she had with employees of credit reporting agencies
5 and is offered in order to prove the things stated by those employees during the
6 conversations. (*See* doc. # 70 at ¶¶ 2-3.)

7 Baker lays no foundation to qualify any of this evidence for an exception to the
8 hearsay rule. Arguably, for instance, the credit reports fall within the business records
9 exception of Fed.R.Evid. 803(6). However:

> A writing is admissible under this exception only if two foundational facts are proved: (1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity. *These facts must be proved through the testimony of the custodian of the records or other qualified witness,* though not necessarily the declarant.

14 *Beyene*, 854 F.2d at 1183 n.4 (emphasis added) (citations and internal quotations omitted).
15 As a mere consumer, Baker cannot testify to the truth of these necessary foundational facts.
16 As stated by the *Capital Funding* court, which found the business records exception
17 inapplicable under very similar circumstances, "[Plaintiff] has not provided sufficient
18 evidence that [the authenticating witness] has personal knowledge of the record keeping
19 practice of [the credit reporting agency], a company [the authenticating witness] is neither
20 employed by nor affiliated with, other than as a consumer. Accordingly, the Court did not
21 error in excluding the credit reports." *Capital Funding*, 2005 U.S. Dist. LEXIS at *7. The
22 court therefore does not look to Baker's hearsay evidence in deciding Retailers' motion for
23 summary judgment. *Beyene*, 854 F.2d at 1182 (holding that because defendant had not
24 properly laid a foundation for any exception to the hearsay rule, defendant's hearsay evidence
25 was properly ignored on motion for summary judgment).

26 The court granted Baker's request for additional time to respond to Retailer's
27 evidentiary objections in the event that the court denied Baker's motion to strike those
28 objections. (*See* doc. # 93.) Baker's supplemental submission does not correct the

evidentiary insufficiencies. (*See* doc. # 95.) Exhibits 1-5 and paragraphs 2, 3, and 4 of Baker's affidavit are therefore inadmissible to the extent they rely on or constitute inadmissible hearsay.

### B.     Effect Of Inadmissible Evidence On Baker's Reasonable Investigation Claim

Because Baker has submitted no admissible evidence contradicting Retailers' evidence related to the reasonableness of its investigations, no reasonable jury could find that Retailers' investigation and resolution of the disputes was unreasonable, even if the jury did not believe Retailers' witnesses. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, (9th Cir. 1987) ("Discredited testimony is not a sufficient basis for drawing an affirmative contrary conclusion." (citations omitted)). The court therefore grants Retailers' motion.

## VI.    Allegation Of Impermissible Credit Report Solicitation

Baker's Complaint suggests that Retailers' solicitation of Baker's credit report, when deciding whether to reinstate her Mervyn's credit line to its previous amount, was improper. (Complaint at ¶ 85.) The Fair Credit Reporting Act does not, however, impose liability on users of consumer credit information. *Frederick v. Marquette Nat'l Bank*, 911 F.2d 1, 2 (7th Cir. 1990). Because Baker has not opposed Retailers' motion on this issue and has provided no other rationale for imposing liability based on Retailers' solicitation of a credit report, the court grants Retailers' motion.

**IT IS THEREFORE ORDERED** that Retailers' motion for summary judgment (doc. # 63) is granted.

DATED this 24th day of January 2006.

_____
Neil V. Wake
United States District Judge