**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Baker, | No. CV 04-1192-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Capital One Bank; Equifax Information Services, LLC, | |
| Defendants. | |

The court has considered Defendant Capital One Bank's Motion for Summary Judgment (doc. # 122) and Defendant Equifax Information Services, L.L.C.'s Motion for Summary Judgment (doc. # 125).

Plaintiff Christine Baker brought this action against various defendants alleging violations of the Fair Credit Reporting Act and the Equal Credit Opportunity Act. The two remaining defendants in the case, Equifax Information Services, L.L.C. ("Equifax") and Capital One Bank ("Capital One"), now move for summary judgment.

**I.     Overview of Baker's Claims**

Since the 1990s, Capital One has issued Baker four credit cards. Capital One reports information about Baker, as its customer, to credit reporting agencies such as Equifax. The agencies then report that information to parties seeking to use it for certain permissible purposes. *See* 15 U.S.C. § 1681b.

1    Although Baker raises several claims against Capital One, a central complaint for
2 Baker is that Capital One does not report its cardholders' credit limits. Baker has argued that
3 a credit card company's failure to report its cardholders' credit limits leads to a reduction in
4 the cardholders' FICO credit scores. As a result, users of credit information employing FICO
5 credit scores in their decisionmaking — such as insurance companies determining what rate
6 to charge, *e.g.*, *Reynolds v. Hartford Fin. Servs. Group*, 435 F.3d 1081, 1089 (9th Cir. 2006)
7 — make decisions unfavorable or less favorable to such cardholders. Baker's evidence
8 suggests that, up to this point at least, she is correct.

9    One of the "most important factors" used in determining a consumer's FICO credit
10 score is the "proportion of balances to credit limits" in their revolving accounts. (Doc. # 137
11 Ex. M-1 at 3 (Equifax "myFICO" score report and explanation).) As argued by Baker and
12 strongly suggested by the evidence, if a credit card company has not reported its cardholder's
13 credit limit, FICO score generators substitute the cardholder's "high credit" amount in place
14 of the credit limit when calculating this important factor. (*See id.* at Ex. M-1 at 3:5.) The
15 "high credit" amount, which is the largest amount the cardholder has utilized in any one
16 cycle from the creditor, is generally lower than the cardholder's credit limit (except, of
17 course, for cardholders that at some time have exceeded their permitted credit limit). The
18 resultingly higher proportion of balance to credit limit resulting where the "high credit"
19 amount is used negatively affects the cardholder's overall FICO credit score. Despite this
20 arbitrarily harmful result, it appears that Capital One continues to report its cardholders'
21 "high credit" amounts but not their credit limits.[1]

22    Aside from this complaint, Baker brings other claims against Capital One and claims
23 against Equifax, virtually all of which arise under the Fair Credit Reporting Act, 15 U.S.C.
24 §§ 1681 to 1681u. Her claims predominantly are for allegedly negligent misreporting,
25 including the misreporting of information related to Baker's 1996 bankruptcy, as well as for

---

[1] Retailers National Bank, a previous defendant in this litigation, appears recently to have begun reporting its customers' credit limits in addition to their "high credit" amounts. (Doc. # 137 at 9:6-7; *id.* at Ex. M-1 at 11 (Target NB entry of credit report).)

- 2 -

allegedly negligent failures to follow statutorily prescribed procedures. The provision governing civil liability for negligent violation of the Fair Credit Reporting Act is located at 15 U.S.C. § 1681o. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332 (9th Cir. 1995). That section provides in relevant part:

> **§ 1681o. Civil liability for negligent noncompliance**
> **(a) In general**
> Any person who is negligent in failing to comply with any requirement imposed under this subchapter [15 U.S.C. §§ 1681 to 1681u] with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> **(1)** any actual damages sustained by the consumer as a result of the failure; and
> **(2)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Although Baker has also argued throughout this litigation that these and the other defendants willfully violated the law in order to ruin her credit score and the credit scores of millions of other Americans, she has provided no evidence to support a finding of willful violation against either Capital One or Equifax. *See Reynolds*, 435 F.3d at 1097-99 (defining "willfully" as it appears in the Fair Credit Reporting Act and discussing evidence that may be used to show willfulness or lack thereof). As regards Baker's claims for negligent violations, the court addresses Capital One's motion first and then the motion by Equifax.

## II.     Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citations omitted). The Court must evaluate a party's motion for summary judgment construing the alleged facts with all reasonable inferences favoring the nonmoving party. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

1  The party seeking summary judgment bears the initial burden of informing the Court
2  of the basis for its motion and identifying those portions of the pleadings, depositions,
3  answers to interrogatories, and admissions on file, together with the affidavits, if any, which
4  it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v.*
5  *Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).  Where the moving party has met its
6  initial burden with a properly supported motion, the party opposing the motion "may not rest
7  upon the mere allegations or denials of his pleading, but . . . must set forth specific facts
8  showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citations
9  omitted).  Summary judgment is appropriate against a party who "fails to make a showing
10 sufficient to establish the existence of an element essential to that party's case, and on which
11 that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *accord*
12 *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).  Although the initial
13 burden is on the movant to show the absence of a genuine issue of material fact, this burden
14 may be discharged by indicating to the Court that there is an absence of evidence to support
15 the nonmoving party's claims. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315
16 (9th Cir. 1995).

## III. Capital One's Motion for Summary Judgment

Baker's Second Amended Complaint (doc. # 48) ("Complaint") alleges that she filed notices of dispute with credit reporting agencies about information Capital One had inaccurately reported to those agencies. (*See* Compl. at ¶ 81.)  According to Baker, when these notices were forwarded to Capital One, Capital One negligently failed to fulfill its obligations under 15 U.S.C. § 1681s-2(b).  That section provides:

> **(b) Duties of furnishers of information upon notice of dispute**
> **(1) In general**
>   After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>     **(A)** conduct an investigation with respect to the disputed information;

- 4 -

> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> **(C)** report the results of the investigation to the consumer reporting agency;
> **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>> **(i)** modify that item of information;
>> **(ii)** delete that item of information; or
>> **(iii)** permanently block the reporting of that item of information.

Baker argues that Capital One violated this section in responding to notices of dispute about four categories of reported information. (Compl. at ¶ 81 (a)-(l).)  First, Baker disputed Capital One's failure to report her credit limit.  Second, in May and June of 2002, Baker disputed the date of Baker's bankruptcy as reported by Capital One.  Third, in September of 2002, Baker disputed the current balance reported by Capital One; Capital One then corrected the current balance but did not correspondingly update her "high credit" amount, forcing her to submit a further dispute in October of 2002.  Fourth, in response to Baker's dispute, Capital One changed the "high credit" amount to $0 for two of her accounts.  The court addresses Baker's claims related to each of these disputes in turn.

### A.   Credit Limits

Baker argues that in response to her notice of dispute, Capital One violated 15 U.S.C. § 1681s-2(b) by reporting only her "high credit" amount and not her credit limit.  According to Baker, Capital One's failure to subsequently include her credit limit in its reports rendered those reports "incomplete" under § 1681s-2(b)(1)(D).  The court, however, has already determined that 15 U.S.C. § 1681s-2(b) does not by its terms require creditors to report consumers' credit limits.  (Doc. # 103 at 4-5 (order of 1/24/2006).)  Granted, a creditors' choice not to report its customer's credit limits may negatively effect those customers' credit

1  scores, if calculated using FICO methodology.  But third party use of a possibly imperfect
2  methodology in synthesizing consumer information for commercial use does not give rise
3  to a legal duty, previously unrecognized, requiring creditors to cater their reporting to such
4  third party's methodology.  Baker has provided no authority for the proposition that creditors
5  bear responsibility for assuring that FICO score generators render "accurate" results when
6  inputted with otherwise accurate reported information.  Rather, the legal duty of creditors to
7  report information in response to disputes is governed by 15 U.S.C. § 1681s-2(b), which
8  includes no specific requirement that credit limits be reported by creditors who do not
9  ordinarily do so.  While other statutes, regulations or caselaw may or may not require the
10 reporting of certain specific items of information such as credit limits, Baker has waived her
11 rights under such authority by failing to present it here.  *See Arai v. Am. Bryce Ranches, Inc.*,
12 316 F.3d 1066, 1070 n.4 (9th Cir. 2003).  Capital One's motion for summary judgment on
13 this claim is therefore granted.

### B.    Date of Bankruptcy Reported in May and June of 2002

15 Baker next alleges that after receiving notification of her dispute, Capital One
16 continued to misreport the date of her bankruptcy.  Baker alleges that despite two such
17 notifications, Capital One reported to the credit reporting agency Experian that one of her
18 accounts (the "52910 account") had been discharged in bankruptcy in April of 2001, when
19 in fact the account had been discharged in 1996.

20 To establish a prima facie case of a Fair Credit Reporting Act violation, Baker must
21 present evidence showing that the defendant reported inaccurate information.  *See Guimond*,
22 45 F.3d at 1333 (setting forth requirements for prima facie case under analogous § 1681e(b)).
23 The defendant can thereafter avoid liability by showing that the inaccurate report was
24 generated despite the defendant's following reasonable procedures or performing a
25 reasonable investigation.  *See id.*

26 Capital One's motion for summary judgment challenges this claim on three grounds.
27 Capital One argues (1) that the evidence Baker submits does not suggest Capital One
28 reported inaccurate information, because Baker is misinterpreting that evidence, (2) that

- 6 -

1  Capital One satisfied its duty to perform a reasonable investigation following both the May
2  and June disputes, and (3) that the statute of limitations bars any action based on the May
3  dispute.

### 1. Baker's Evidence of Capital One's Inaccurate Reporting

Baker introduces as evidence of Capital One's inaccurate reporting a "correction summary" issued by Experian to Baker following Capital One's confirmation of the disputed information with Experian. (Doc. # 131 Ex. 3 at Ex. A at EXP0175.) To understand the related arguments, it is necessary to describe in some detail the appearance of this summary. For each of Baker's accounts, the summary has eight columns of information. The headings for six of the eight columns suggest that more than one type of information is contained in the column. For example, the second column's heading is "Date opened/ Reported since." The date the account was opened readily could be different from the date the creditor began reporting about the account to Experian, and indeed, for Baker's 52910 account, the entry in this column reads "7-1994/ 6-1996," *i.e.*, the account was opened in July of 1994 and Capital One began reporting on this account to Experian in June of 1996. As another example, the fourth column's heading reads "Type/ Term/ Monthly payment," and the entry in that column is "Revolving/ NA/ $0."

The parties' dispute centers around the third column, which has the heading "Date of status/ Last reported." The "status" that the "Date of status" apparently corresponds to is also noted: "Status: Included in bankruptcy/ Account charged off." For Baker's Capital One accounts, the entry in the column with the heading "Date of status/ Last reported" is "4-2001/ 4-2001." Baker argues that Experian is reporting the account as having been "included in bankruptcy" in April of 2001 (and also last reported in April of 2001), suggesting that Capital One is erroneously reporting the date of her 1996 bankruptcy to Experian. Her understanding, moreover, is buttressed by the entry in this column for another of Baker's accounts, also with "status" of "included in bankruptcy" but with the entry "7-1996/ 12-2000." (Doc. # 131 Ex. 3 at Ex. A at EXP0176.) This other creditor, then, appears to have last reported in December of 2000 that Baker's bankruptcy was in July of 1996. For Baker,

1  this indicates that Capital One performed a perfunctory investigation upon receiving notice
2  of her dispute, did not correct the error, and continued to report an erroneous date to
3  Experian.

4  Capital One provides evidence purporting to unloose Baker from her confusion. The
5  affidavit testimony of Kimberly Hughes, a Specialist in Consumer Affairs Special Services
6  for Experian, is that "[t]he dates appearing in the 'status' column of Experian's credit reports
7  reflect the date of the status or the date the creditor last reported information about the
8  account." (Doc. # 131 Ex. 3 at Aff. at ¶ 5.) This testimony, of course, tells us nothing that
9  the column heading, "Date of status/ Last reported," did not already. Hughes also testifies
10 that Experian "collects bankruptcy discharge information through public records and does
11 not rely on furnishers of information to provide information about the date of a consumer's
12 bankruptcy filing." (*Id.* at Ex. 3 at Aff. at ¶ 2.) But this testimony is also unhelpful, given
13 that the information Experian independently gathers is listed in a separate section of its
14 reports. (*Id.* at Ex. 3 at Aff. at ¶ 3.) That Experian collects and reports information on
15 bankruptcy in another section does not clarify whether, for accounts with status of "included
16 in bankruptcy," the "Date of status" field completed by the creditor should correspond with
17 the date of the bankruptcy. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151,
18 1156-57 (11th Cir. 1991) (describing the "accuracy defense" under analogous § 1681e(b)).
19 In light of Baker's evidence, Capital One has failed to show as a matter of law that it
20 accurately reported Baker's information.

21  **2.  Reasonable Investigation**

22  Where a plaintiff has shown evidence tending to show inaccurate reporting, the
23 defendant may "escape liability" by showing that the "inaccurate report was generated
24 despite . . . following reasonable procedures." *Guimond*, 45 F.3d at 1333 (discussing
25 procedures under § 1681e(b) for allegedly unreasonable investigations by reporting
26 agencies). The reasonableness of the defendant's investigation is typically a jury question.
27 *Id.*
28

- 8 -

1  Here, Capital One provides evidence that it conducted a reasonable investigation of
2 Baker's disputes and verified everything mentioned in the notifications. (Doc. # 131 Ex. 1
3 at Aff. at ¶¶ 7, 10.) Baker provides neither argument nor evidence to the contrary, except to
4 surmise that Capital One's investigation must have been unreasonable because it continued
5 to report as it had. Although Capital One would have the burden of proof on this issue at
6 trial, summary judgment in such circumstances is appropriate. *See U.S. for Use & Benefit*
7 *of Hawaiian Rock Products Corp. v. A.E. Lopez Enters.*, 74 F.3d 972, 975 (9th Cir. 1996)
8 (affirming summary judgment for plaintiff where no dispute of fact existed on any of the four
9 elements of the plaintiff's claims); *Flying Diamond Corp. v. Pennaluna & Co.*, 586 F.2d 707,
10 713 & n.3 (9th Cir. 1978) (affirming summary judgment on negligence claim where the "case
11 was in effect a trial on a stipulated record. There is nothing to weigh, there is no credibility
12 involved" (citations and internal quotations omitted)); *Chapman v. Rudd Paint & Varnish*
13 *Co.*, 409 F.2d 635, 643 (9th Cir. 1969) ("One against whom a motion for summary judgment
14 is filed is therefore under a duty to show that he can produce evidence at the trial, and is not
15 entitled to a denial of that motion upon the unsubstantiated hope that he can produce such
16 evidence at trial." (citations omitted)). The court nevertheless addresses Capital One's
17 statute of limitations argument in the interest of thoroughness.

18 **3.     Statute of Limitations for the May Dispute**

19  An action to enforce any liability created under the Fair Credit Reporting Act is to be
20 brought no later than "2 years after the date of discovery by the plaintiff of the violation that
21 is the basis for such liability." 15 U.S.C. § 1681p(1). Baker filed this action on June 9, 2004.
22 (Doc. # 1.) Baker was informed of the results of Capital One's investigation by mail sent on
23 or about May 31, 2002. (Doc. # 131 Ex. 4 at ¶ 9.) Baker, however, asserts that she retreives
24 her mail only "about once a month" and submits evidence that she did not receive the
25 relevant mail until June 18, 2002. (Doc. # 137 at 9:20-22; doc. # 138 at ¶22.) Summary
26 judgment on this ground therefore is denied.

27
28

### C. "High Balance" Reported in September and October of 2002

Finally, Baker's Complaint alleges that in September of 2002, she disputed the balance on another of her Capital One accounts (the "5187 account"). She did so, she argues, not because her balance was incorrect, but because the "high credit" amount listed was incorrect and there was no option to dispute the "high credit" amount. (Doc. # 137 at 5:18-22.) In response, Capital One updated the balance only, without altering the "high credit" amount. (Doc. # 122 at 10: 10-16.)

In October, however, Baker disputed the "high credit" amount on the account, despite her assertion that she was previously unable to do so. (*Id.* at 10:17-25; doc. # 131 at ¶ 23; doc. # 139 at ¶ 23.) Baker does not contest Capital One's assertion that her "high credit" amount then was corrected.

In light of Baker's concession that Capital One corrected all erroneous information brought to its attention, summary judgment is appropriate. Section 1681s-2(b)(1)(A) obligates creditors that receive notice of a dispute to conduct an investigation "with respect to the disputed information." In both the September and October investigations, Capital One conducted an investigation of the information disputed and corrected it.

### D. "High Credit" Amount Changed to $0

Baker's Complaint alleges that in response to her disputes, on January 24, 2003, Capital One changed the "high credit" amount for two of her accounts to $0. The evidence Baker presents in support of this claim is at best incomprehensible and in any event does not show that Capital One changed her "high credit" amount to zero. (Doc. # 137 Ex. N-1.) Baker has therefore failed to fulfill her duty as the non-movant on summary judgment to present evidence showing that Capital One reported inaccurate information.

In conclusion, summary judgment is appropriate on all of Baker's claims. Capital One's objections to Baker's evidence are therefore moot.

1  **III.    Equifax's Motion for Summary Judgment**

2  Equifax moves for summary judgment on each of Baker's nine claims, located at ¶¶
3  113-121 of Baker's Complaint. The court addresses Equifax's motion with respect to each
4  claim.

5      **A.    Reasonable Procedures Under 15 U.S.C. § 1681e(b)**

6  Paragraph 113 of Baker's Complaint alleges that Equifax failed to follow reasonable
7  procedures to assure the accuracy of the information about Baker that it reported. Section
8  1681e(b) of Title 15, U.S.C., provides:

> **(b) Accuracy of report**
> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

12 "In order to make out a prima facie violation under § 1681e(b), a consumer must present
13 evidence tending to show that a credit reporting agency prepared a report containing
14 inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th
15 Cir. 1995) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.
16 1991)).[2] Thereafter, "an agency can escape liability if it establishes that an inaccurate report
17 was generated depite the agency's following reasonable procedures." *Id.*

18 Baker does not refute Equifax's argument that none of the documents she relies upon
19 is a "consumer report" as required under § 1681e(b). (*See* Doc. # 125 at 5:27-6:13); *Thomas*
20 *v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1233 (M.D. Ala. 2002) (holding that
21 "the volumes of credit information Defedants relayed to Plaintiff do not constitute 'consumer
22 reports' under the FCRA." (citations omitted)). As a more general matter, Baker cites no
23 evidence of any individual instance of inaccurate reporting by Equifax so as to make out a
24 prima facie case. Where the moving party has met its initial burden with a properly
25 supported motion for summary judgment, the party opposing the motion "must set forth

---

[2] Equifax's submission about the requisite showing for a prima facie case under *Guimond* misstates that authority. (*See* doc. # 125 at 5:19-26.)

- 11 -

1 specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,*
2 *Inc.*, 477 U.S. 242, 248 (1986) (citations omitted).  Instead of disputing or even
3 acknowledging Equifax's arguments about Baker's evidence in support of her prima facie
4 case, Baker merely reiterates, without citing evidence, that Equifax's reporting was
5 inaccurate and that its procedures were unsatisfactory. (Doc. # 145 at 3-4.) Baker's
6 previous, wholesale incorporation of her one-hundred-one paragraph statement of facts into
7 her brief (*id.* at 3:11-13), cannot suffice to carry her burden as the non-moving party on
8 summary judgment. The court will not undertake the role of advocate to review the entirety
9 of Baker's evidence in search of what could be helpful in defending those elements of her
10 claim challenged by Equifax. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029-31
11 (9th Cir. 2001).

12     **B.**    **Incomplete Disclosures Under 15 U.S.C. § 1681g(a)(1) and A.R.S. § 44-1522**
13
14 In Paragraph 114 of her Complaint, Baker alleges that Equifax failed to provide
15 complete consumer disclosures in violation of 15 U.S.C. § 1681g(a)(1) and A.R.S. § 44-
16 1522. The court addresses Baker's claims under these two statutes in turn.

    **1.**    **15 U.S.C. § 1681g(a)(1)**

17 With exceptions, 15 U.S.C. § 1681(g)(a) provides that "[e]very consumer reporting
18 agency shall, upon request . . . clearly and accurately disclose to the consumer . . . [a]ll
19 information in the consumer's file at the time of request." "The term 'file,' when used in
20 connection with information on any consumer, means all of the information on that consumer
21 recorded and retained by a consumer reporting agency regardless of how the information is
22 stored." 15 U.S.C. § 1681a(g).
23
24 Baker fails to raise a triable issue as to whether Equifax fully disclosed all information
25 on file in response to Baker's requests. Equifax, for its part, presents evidence that it
26 provided Baker all the information in her file each time she requested it. (Doc. # 133 Ex. A
27 at ¶¶ 13, 26.) Baker's evidence that for some accounts Equifax retains up to 22 fields of data
28 (doc. # 146 Ex. P-18 at EIS0092) does not contradict Equifax's evidence that it retained no

undisclosed data about her accounts. Moreover, Baker's apparent attempt to compare the quantity of information reported about her in different Equifax publications, such as a tri-merged report comparing Equifax, Experian, and Trans Union credit reports (*id.* at P-17), does not show that the sole "consumer disclosure" form Baker relies upon was in any way incomplete. (*Id.* at Ex. P-9.) The motion for summary judgment on Baker's claim under 15 U.S.C. § 1681g(a)(1) is therefore granted.

### 2. A.R.S. § 44-1522

Section 44-1522(A), A.R.S., provides:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

Baker presents no evidence that Equifax deceived her in any transaction in which she purchased merchandise or that Equifax acted with intent to conceal information. The motion for summary judgment on Baker's claim under A.R.S. § 44-1522 is therefore granted.

### C. Improper Sale of Data to Resellers that Provide Incomplete Disclosures and Overcharge for Resale of the Data

In Paragraph 115 of her Complaint, Baker alleges that Equifax sold credit data to resellers of that data engaging in illegal practices. Baker's brief provides no authority for Equifax's liability on such facts. The motion for summary judgment on this claim is therefore granted.

### D. Summary of All Rights Under 15 U.S.C. § 1681g(c)(2)

Baker alleges in Paragraph 116 of her Complaint that Equifax failed to provide her a summary of all rights in violation of 15 U.S.C. § 1681g(c)(2). However, in her brief, Baker concedes that Equifax sent a summary of rights with each disclosure. (Doc. # 145 at 5:27-28.) Baker again alleges that Equifax is vicariously liable under the Fair Credit Reporting Act for noncompliance by resellers of the data with whom Equifax does business but

1 provides no authority for that proposition. (*Id.* at 6:2-4.) The motion for summary judgment
2 on this claim is therefore granted.

### E.     Provision of Trained Personnel Under 15 U.S.C. § 1681h(c)

In Paragraph 117 of her Complaint, Baker alleges that Equifax failed to provide trained personnel in violation of 15 U.S.C. § 1681h(c). That section provides:

> **(c) Trained personnel**
> Any consumer reporting agency shall provide trained personnel to explain to the consumer any information furnished to him pursuant to section 1681g of this title.

In her brief, Baker submits evidence that Equifax makes available trained personnel for 60 days after the consumer obtains an Equifax credit report. (Doc. # 146 Ex. R-8.) Baker's argument, then, must be that 15 U.S.C. § 1681h(c) requires Equifax to make available trained personnel for a longer period of time. Given that the statute expressly ties the obligation to make personnel available to the furnishing of information under section 1681g, the court will not read section 1681h(c) to require availability in perpetuity, at least where Baker has provided no authority on the issue. The court therefore grants the motion for summary judgment on this claim.

### F.     Consideration of Baker's Information Under 15 U.S.C. § 1681i(a)(4)

Paragraph 118 of the Complaint alleges that, when provided notice of erroneous information in Baker's credit report, Equifax failed to consider Baker's submitted information in violation of 15 U.S.C. § 1681i(a)(4). That provision states:

> **(4) Consideration of consumer information.**–In conducting any reinvestigation . . . with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

Equifax submits evidence that for each dispute remitted by Baker, it conducted a full reinvestigation and reviewed all information submitted. (Doc. # 133 Ex. A at ¶¶ 12, 21-22.) Where the moving party has met its initial burden with a properly supported motion for summary judgment, the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citations omitted). In response

- 14 -

1  to Equifax's motion, Baker makes no comprehensible argument for liability under this
2  section. (Doc. # 145 at 6-9.) Baker's general allegations of erroneous reporting contain no
3  isolated, specific facts upon which to premise liability under § 1681i(a)(4). Specifically,
4  Baker's brief neither details nor cites information provided to Equifax that was allegedly
5  ignored. The motion is therefore granted.

### G. Notice by Fax or Email Under 15 U.S.C. § 1681i(a)(6)

In Paragraph 119 of Baker's Complaint, she alleges that Equifax failed to provide written notices by fax or email instead of by mail, as she requested. Baker alleges that Equifax is liable under 15 U.S.C. § 1681i(a)(6), which provides:

> **(6) Notice of results of reinvestigations.---**
> **(A) In general.**—A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

Baker argues that her mailbox is miles from her home and that Equifax utilizes mail delivery in order to subject Baker to identity theft. However, § 1681i(a)(6) merely authorizes, and does not require, consumer reporting agencies to deliver notices "by other means" than mail. Baker presents no authority suggesting Equifax was required to utilize email or fax at Baker's request. The motion for summary judgment on this claim is therefore granted.

### H. Descriptions of Reinvestigation Procedures Under 15 U.S.C. § 1681i(a)(7)

Paragraph 120 of Baker's Complaint alleges that Equifax failed to provide descriptions of its reinvestigation procedures in violation of 15 U.S.C. § 1681i(a)(7), which provides:

> **(7) Description of reinvestigation procedure.**—A consumer reporting agency shall provide to a consumer a description referred to in paragraph (6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description.

The "description" that must be provided by the consumer reporting agency is "a description of the procedure used to determine the accuracy and completeness of the information . . . including the business name and address of any furnisher of information contacted in

- 15 -

1  connection with such information and the telephone number of such furnisher, if reasonably
2  available." 15 U.S.C. § 1681i(6)(B)(iii).

3  Baker provides no evidence that Equifax failed to provide an adequate description of its procedures upon Baker's request. In her brief, Baker cites generally to her Exhibit P, which is a thick stack of papers containing 20 separate documents. The only specific citation with regard to this claim is to Exhibit P-12. (Doc. # 145 at 9.) It is impossible to determine what information in Exhibit P-12 is referred to or whether the document even supports Baker's assertion. No evidence is cited indicating which, if any, of these documents were received in response to a request for a description by Baker under § 1681i(a)(7), or even whether Baker ever made such a request. The motion for summary judgment is therefore granted.

**I.    Misrepresentation of CreditWatch Program Under A.R.S. § 44-1522**

Paragraph 121 of Baker's Complaint alleges that Equifax misrepresented its CreditWatch program in violation of A.R.S. § 44-1522. Baker argues that having purchased "CreditWatch consumer disclosures," they were never delivered. (Doc. # 145 at 10:1-2.) Equifax provides evidence that it did not sell the CreditWatch program to Baker and that CreditWatch is sold by a separate entity named Equifax Consumer Services, Inc. (Doc. # 133 Ex. A at ¶ 27.)

Baker in effect argues that the court should hold Equifax liable for the actions of Equifax Consumer Services, Inc. No authority is provided in support of that course of action. The motion for summary judgment is therefore granted.

**IT IS THEREFORE ORDERED** that Capital One's Motion for Summary Judgment (doc. # 122) is granted.

**IT IS FURTHER ORDERED** that Equifax's Motion for Summary Judgment (doc. # 125) is granted.

/ / /
/ / /
/ / /

1    **IT IS FURTHER ORDERED** that the clerk enter judgment in favor Defendant
2  Capital One Bank and Defendant Equifax Information Services, L.L.C., and that Plaintiff
3  Christine Baker take nothing on her complaint. The clerk shall terminate this action.
4    DATED this 29th day of August 2006.

_____
Neil V. Wake
United States District Judge